UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| MARCUS D. STINNETT, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | 2:25-CV-00096-DCLC-CRW |
| v. | ) | |
| COMMONWEALTH ANNUITY & LIFE INSURANCE COMPANY, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motions to Remand [Docs. 8, 10]. These motions are fully briefed and are ripe for resolution. For the following reasons, these motions are **GRANTED**.

### I. BACKGROUND

In 1988, spouses Cleo and Alice Stinnett purchased a Fidelity life insurance policy in the face amount of $500,000 from insurance agent William Sidbury. [Doc. 1-1, ¶ 14]. The policy was issued on October 8, 1988, and named the trustee of the Stinnett Family Trust as both the owner and beneficiary of the policy. [*Id.* at ¶ 16]. Plaintiff Marcus Stinnett is now the sole beneficiary of the Trust, and Plaintiff David Stinnett is the remainder beneficiary of the Trust. [*Id.* at ¶ 3].

Plaintiffs claim that Defendants Capital Analysts Financial Group, Inc., Capital Analysts, Inc., Capital Analysts of Knoxville, Inc., Employee Benefit Services, Inc., and Lanrick Group, Inc. (collectively, the "Tennessee Defendants") engaged or employed Sidbury and authorized him to

sell insurance policies on their behalf.[1]  [*Id.* at ¶ 11].  According to the Complaint, Sidbury made three material representations about the policy to Cleo and Alice.  First, he represented that the policy could be purchased with a one-time premium payment of $28,770.  Cleo and Alice paid that amount in full.  [*Id.* at ¶ 17].  Second, Sidbury claimed any future premiums would be funded internally via policy "loans."  [*Id.* at ¶¶ 17-18].  These "loan proceeds" would be used to fund annual term insurance a face amount sufficient to cover any outstanding loan balance.  [*Id.*].  Third, Sidbury stated that the face amount of the policy at their deaths would always remain $500,000.  [*Id.* at ¶ 19].

In 2008, after Fidelity transferred the policy to Defendant Commonwealth, Stinnett's attorney wrote to Commonwealth seeking to confirm that the policy was fully paid up and that its value would not diminish.  [Doc. 9-2].  Commonwealth responded on November 11, 2008, and stated that the policy's vanishing premium rider provided for the automatic payment of the policy's premiums and any loan interest.  [Doc. 9-3].  The letter further stated that "[t]he payments are made through the use of non-guaranteed elements, if any, policy loans and one-year term insurance," and that the one-year term coverage was purchased to increase the face amount by the loan balance so that the death benefit would remain "around $500,000.00."  [*Id.*].  What the letter did not state, however, was whether the policy was indeed paid-up or what the death benefit was at that time.

Cleo passed away on February 21, 2017, and Alice passed away on December 18, 2023.  [Doc. 1, ¶ 23].  After Alice's death, Plaintiffs began the claims process.  [*Id.* at ¶ 24].  Commonwealth issued a few checks for relatively small sums ranging from approximately $1,000

---

[1]  Plaintiffs claim that Sidbury was also an agent of Fidelity, which transferred the Stinnett's policy to Defendant Commonwealth Annuity & Life Insurance Company ("Commonwealth") on or about January 1, 2008.

to $4,000, none of which were cashed. [*Id.* at ¶ 25]. On January 31, 2025, Plaintiffs demanded Commonwealth pay the full $500,000 face value of the policy to the trustees. [*Id.* at ¶ 26]. Commonwealth has not yet paid the trustees that amount. [*Id.* at ¶¶ 26-27].

On April 24, 2025, Plaintiffs filed this case in the Circuit Court of Cocke County, Tennessee. [Doc. 1-1]. With respect to the Tennessee Defendants, the Complaint raises claims for negligence, misrepresentation, detrimental reliance, and violations of the Tennessee Consumer Protection Act[2] based on Sidbury's alleged misrepresentations concerning the policy's structure and benefits.

Defendants timely filed a Notice of Removal on June 27, 2025, arguing that the Tennessee Defendants were fraudulently joined and that diversity jurisdiction exists under 28 U.S.C. § 1332. [Doc. 1]. Plaintiffs are citizens of Tennessee. Defendant Commonwealth is incorporated in Massachusetts and has its principal place of business there; it is therefore a citizen of Massachusetts. The Tennessee Defendants are each citizens of Tennessee. Plaintiffs filed two Motions to Remand [Docs. 8, 10], which are now ripe for consideration.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1441(a), any civil action brought in a state court may be removed to the federal district court and division embracing the place where such action is pending, so long as the district court has original jurisdiction. 28 U.S.C. § 1441(a). Removing defendants bear the burden of establishing federal subject-matter jurisdiction by a preponderance of the evidence. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006). After a case is removed, a plaintiff may bring a motion to remand under 28 U.S.C. § 1447(c). Removal statutes are narrowly construed,

---

[2] In the Motion for Remand, Plaintiffs conceded that the Tennessee Consumer Protection Act's five-year statute of repose bars their TCPA claims against the Tennessee Defendants. [Doc. 9, pg. 22].

3

*Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000), and "all doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999*)*.

When the removing party alleges diversity of citizenship jurisdiction on the basis of fraudulent joinder, it must present evidence that a plaintiff could not establish a cause of action against the non-diverse defendants under state law. *Id.* "The relevant inquiry is whether there is a colorable basis for predicting that a plaintiff may recover against a defendant." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) (quotations and citation omitted). When considering whether there has been fraudulent joinder, a court may "pierce the pleadings" and consider summary judgment-type evidence for the limited purpose of determining whether undisputed facts exist that could negate the claim. *Id.*

### III. ANALYSIS

Here, the sole inquiry is whether Plaintiffs had a colorable cause of action against the Tennessee Defendants under Tennessee law. *Id.* The Court does not resolve the merits of Plaintiff's claims but asks only whether there is a reasonable basis to predict that a Tennessee court could impose liability. If a possibility of recovery exists, fraudulent joinder is not established.

Commonwealth argues there are two reasons why Plaintiffs do not have a colorable cause of action against the Tennessee Defendants. First, they contend that Plaintiffs cannot state a claim because the policy terms align with Sidbury's representations. Second, they contend that any claims are time barred because the statute of limitations for these claims began to run when the policy was issued in 1988 with the statute expiring in 1991, three years later. The Court will consider each argument in turn.

### A. Were Sidbury's representations accurate?

"In a fraudulent joinder inquiry, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Wolf v. Bankers Life & Cas. Co.*, 519 F. Supp. 2d 674, 687 (W.D. Mich. 2007) (quoting *Pacheco de Perez v. AT&T Corp.*, 139 F.3d 1368, 1380–81 (11th Cir.1998); *see Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 952–53 (6th Cir. 2011) ("[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant.") (citation omitted).

Defendants argue that Plaintiff's claims fail because the policy operates precisely as Sidbury described. But that assertion rests on contested factual premises. Plaintiffs allege that Sidbury represented the policy would require no further out-of-pocket premiums and would pay a $500,000 death benefit. They allege that Commonwealth's refusal to pay proves that the policy does not operate as Sidbury represented. [Doc. 15, pgs. 7-8]. Under Tennessee law, negligent misrepresentation requires that a defendant, acting in the course of business, supplied false information for the guidance of others, failed to exercise reasonable care in communicating it, and that the plaintiff reasonably relied upon it. *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991). Given the differences between the alleged representations and the policy's timing and loan provisions—particularly during the early policy years—the Court cannot conclude that Plaintiffs lack even an arguable basis for such a claim.

The same is true for detrimental reliance (promissory estoppel), which requires a promise, reasonable reliance, and resulting detriment. *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007). Whether Sidbury's representations were sufficiently definite and

whether reliance was reasonable are fact-intensive questions. Under the forgiving fraudulent-joinder standard, those questions cannot be resolved against Plaintiffs as a matter of law.

Commonwealth itself identifies factual disputes regarding the policy's structure and the effect of its non-guaranteed elements. Whether the policy guaranteed a $500,000 benefit, and whether Sidbury's statements were accurate depends on the interpretation of the policy's language. Whether Plaintiff's claim here is viable is a fact-intensive analysis best reserved for the trier of fact. Therefore, because the record does not conclusively show that Sidbury's representations were accurate, Defendants have failed to show that Plaintiffs lack even a colorable cause of action against the Tennessee Defendants.

**B. When did the statute of limitations begin to run?**

The parties agree that a three-year limitations period applies to Plaintiff's claims. The dispute is about the timing of accrual of the claims. Defendants contend the limitations period began in 1988, when the policy was issued and the Stinnetts knew or should have known Sidbury's representations differed from the policy statement. Plaintiffs contend that accrual occurred only when Commonwealth refused to pay the claimed $500,000 benefit following Alice Stinnett's death on December 18, 2023.

Under Tennessee law, a cause of action accrues "when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." *Med. Educ. Assistance Corp. v. State ex rel. E. Tennessee State Univ. Quillen Coll. of Med.*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999); T.C.A. § 28-3-105. Tennessee law also presumes that an insured knows the contents of an insurance policy upon issuance. *Am. Gen. Life Ins. Co. v. Underwood*, 85 F. Supp. 3d 944, 954 (E.D. Tenn. 2015) (quoting *Webber v. State Farm*

6

Case 2:25-cv-00096-DCLC-CRW    Document 17    Filed 03/03/26    Page 6 of 9    PageID #: 185

*Mut. Auto. Ins. Co.,* 49 S.W.3d 265, 274 (Tenn. 2001)). Here, Defendants claim the Stinnetts would have known that at the time the policy was issued.

That presumption, however, does not automatically resolve when an injury becomes reasonably discoverable. Under Tennessee law, a plaintiff is deemed to have discovered an injury when he or she is aware of facts "sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct." *Hira v. New York Life Ins. Co.*, 144 F. Supp. 3d 977, 981 (E.D. Tenn. 2015) (quoting *Pero's Steak and Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002)). The inquiry then is objective and focuses on when a reasonable person would have been alerted to the existence of a claim.

Unlike cases in which the policyholder undisputedly knew of the policy's contents at issue,[3] the record here does not establish, as an undisputed fact, that the Stinnetts knew or should have known that the policy would not provide a $500,000 benefit. Plaintiffs invoked "the discovery rule" which is an "equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained." *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002). The Tennessee Supreme Court has explained that a claim does not accrue until the plaintiff discovers, or reasonably should discover, both (1) the manner in which a breach of duty caused the injury and (2) the identity of the person who breached that duty. *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982). Plaintiff argues that, under this rule, the limitations period did not begin until some point following Alice Stinnett's death on December 18, 2023, when the alleged

---

[3] For example, in *Hira v. New York Life Ins. Co.*, 144 F. Supp. 3d 977, 979 (E.D. Tenn. 2015), the district court found that the statute of limitation accrued when the policy was issued to the Plaintiff who would have at that time been aware of its contents.

deficiencies in coverage became apparent. The resolution of that issue is wrapped in questions of fact.

Alternatively, Commonwealth argues the Stinnetts were on notice no later than 2008, when their attorney contacted Commonwealth to seek clarification regarding the policy's terms. In their 2008 letter, the Stinnetts sought to clarify a letter from Commonwealth about the possibility that the death benefit might decrease the following year. In response, Commonwealth recited terms of the policy that mirrored Sidbury's earlier representations and explained that the Vanishing Rider (also called the Automatic Payment Plan Rider), allowed for the purchase of one-year term insurance "so that your death benefit will stay at around $500,000." [Doc. 9-3].

At a minimum, this exchange does not conclusively establish that the Stinnetts were aware of facts sufficient to put a reasonable person on notice that they had suffered an injury caused by the Tennessee Defendants. On the contrary, Commonwealth's response implied that the Stinnetts' policy was still worth $500,000, suggesting that there was no injury at that time. Viewing the record in the light most favorable to Plaintiffs, the Court cannot say that the 2008 correspondence forecloses, as a matter of law, the application of the discovery rule.

The Court's task is not to decide when the accrual of Plaintiffs' claims occurred but only whether a Tennessee court *could* conclude that the cause of action accrued when Commonwealth refused to pay the $500,000 death benefit. And on the record before the Court, that Court cannot rule out that as a possibility. *See, e.g., Gaul v. Neurocare Diagnostic, Inc.*, No. 02-CV-2135, 2003 WL 230800, at *4 (E.D. Pa. 2003) (granting remand because there was a "possibility that [the discovery rule or another tolling exception] could apply" to plaintiff's claim); *McIntosh v. Blanton*, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004) ("[t]he determination of when a reasonable person should know that his injury was caused by some wrongful or negligent act is generally a question

for the trier of fact."). Any further inquiry into the applicability of the discovery rule is a fact intensive inquiry that would lead the Court beyond the limited inquiry permitted in a fraudulent joinder analysis.

The record does not establish, as a matter of undisputed fact, that Sidbury's alleged representations were accurate. Nor does it conclusively establish that Plaintiffs' claims are barred by the statute of limitations. Both issues depend on factual determinations that exceed the narrow inquiry permitted at this stage. Because Plaintiffs have asserted *at least* a colorable cause of action against the Tennessee Defendants, complete diversity is lacking. This Court therefore lacks subject-matter jurisdiction under 28 U.S.C. § 1332.

IV.   CONCLUSION

For the reasons stated herein, Plaintiffs' Motions to Remand [Docs. 8, 10] are **GRANTED.** The case is **REMANDED** to the Circuit Court of Cocke County, Tennessee. The Joint Motion to Stay Rule 26 Deadlines [Doc. 11] is **DENIED AS MOOT**. The Clerk is **DIRECTED** to transmit a certified copy of this Order to the state court and **CLOSE** this case.

SO ORDERED:

s/ Clifton L. Corker  
United States District Judge